# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MGF HEALTHCARE PARTNERS, INC., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    Case No. 2:19-CV-00926-CLM <br> ) <br> ) |
| BLUE RIDGE HEALTHCARE BIRMINGHAM, LLC, *et al.*, | ) <br> ) <br> ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Where there is smoke, there is often fire. But sometimes finding the fire is not so easy. Plaintiff MGF Healthcare Partners, Inc. ("MGF") lost thousands of dollars when a company it did business with, Defendant Blue Ridge Healthcare Birmingham LLC ("Blue Ridge"), ceased operations. MGF says that co-Defendant Symmetry Healthcare Management LLC ("Symmetry") is also Blue Ridge—or, at least, the company that hides Blue Ridge's money. Symmetry counters that, even though Symmetry and Blue Ridge share five owners and do business together, Symmetry had nothing to do with MGF and Blue Ridge's dealings with each other. In other words, Symmetry is just an innocent bystander that deserves summary judgment.

As discussed within, MGF has shown smoke, but no fire. So the court will **GRANT** Symmetry's motion for summary judgment.

## STATEMENT OF THE FACTS

Blue Ridge operated nursing facilities. MGF is a contractor that provides healthcare personnel to nursing facilities. MGF entered into a Staffing Agreement ("the Agreement") with Blue Ridge to provide skilled nursing staff to Blue Ridge's facility in Bessemer, Alabama. But Blue Ridge failed; it sold the nursing facility, ceased all operations, and failed to make several payments it owed to MGF under the Agreement.

Symmetry provided various management-oriented services to Blue Ridge under a different contract. Among those services was a vendor application packet that Symmetry drafted for Blue Ridge's nursing facility, which potential third-party service providers could complete to do business with the facility. The Agreement between Blue Ridge and MGF was one of those application packets. Symmetry regularly sent invoices to Blue Ridge for these services, which Blue Ridge always paid. But beyond this, Symmetry claims it had no role in the actual management or oversight of Blue Ridge or its facility.

MGF, to put it lightly, disagrees.

In MGF's view, Symmetry and Blue Ridge functioned as a single corporate entity. MGF alleges that Symmetry used Blue Ridge, along with other companies, as a front to avoid liability for accepting services without paying for them. As MGF puts it, Symmetry "created a revenue stream that would be diluted and untraceable

as the funds made their way downstream. Each of the [defendants] would siphon some of the funds until there was nothing for creditors to attach, all the while creating plausible deniability." Doc. 81. So, according to MGF, Symmetry is not merely liable for Blue Ridge's debts; Symmetry *is* Blue Ridge.

MGF offers several factual bases for its conclusion—some supported by the record, some not. MGF points out, correctly, that Symmetry's five owners are also five of the seven owners of Blue Ridge. Blue Ridge also lists Symmetry's headquarters in Florida as its "home office" in its Medicare cost report.

But MGF also alleges, without evidence, that Blue Ridge was undercapitalized from its inception; that one of Blue Ridge's owners (who was not an owner of Symmetry) owned the property housing the nursing facility but never visited the property; and, that Symmetry held itself out as identical to Blue Ridge just because one of Symmetry's owners (who was an owner of Symmetry) signed the Agreement on behalf of Blue Ridge. Lastly, though the court could not locate support for it in the record, MGF claims that Levi Rudd, an owner of Blue Ridge, held a majority stake in Symmetry.

Based on these allegations, MGF filed a complaint in Alabama state court against Blue Ridge, Symmetry, Blue Ridge Healthcare Management LLC, and Blue Ridge Healthcare Holdings in Alabama LLC. Defendants then removed the action here. The court ultimately entered a default judgment against Blue Ridge and Blue

Ridge Healthcare Holdings for failing to acquire counsel or in any way respond to the court's various orders. The parties then moved to dismiss Blue Ridge Healthcare Management, which the court granted, leaving Symmetry as the only remaining defendant against whom the court has not entered judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate only when the moving party shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In turn, to avoid summary judgment, the nonmoving party must go beyond mere allegations to offer specific facts creating a genuine issue for trial. *Id.* at 324. Also, all evidence must be viewed and inferences drawn in the light most favorable to the nonmovant. *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1149 (11th Cir.2005). When no genuine issue of material fact exists, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## ANALYSIS

MGF brings four claims against Symmetry: breach of contract, subterfuge/instrumentality, fraud, and conspiracy. Though MGF acknowledges in its complaint that MGF and Blue Ridge were the only parties to the Agreement, MGF seeks to hold Symmetry liable under the theory that Symmetry and Blue Ridge function as a

single corporate entity. MGF does this mainly by arguing that the court should pierce Blue Ridge's corporate veil and look to Symmetry as the party exercising control. Below, the court describes the legal standard that applies to corporate veil-piercing and then applies that law to Blue Ridge and Symmetry.

### A. Alabama veil-piercing law

Ordinarily, courts recognize a legal distinction between corporations and the individuals who control those corporations. *Moore & Handley Hardware Co. v. Towers Hardware Co.*, 87 Ala. 206, 210, 6 So. 41, 43 (1889). But Alabama law recognizes that "the corporate entity will be disregarded when it is used solely to avoid a personal liability of the owner while reserving to the owner the benefits gained through use of the corporate name." *Messick v. Moring*, 514 So.2d 892, 894 (Ala. 1987). That is, courts may "pierce the corporate veil" to hold liable those who control the corporation. *Id.*

Alabama courts apply several elements and factors in determining whether to strip a corporation of its legal protections. But before reaching this analysis, the party seeking to pierce the corporate veil must identify an appropriate party to whom the corporation's liability could attach. In all cases identified by this court, that party has been a "shareholder, officer, or director" of that corporate entity. In fact, Alabama law appears to strictly limit the principle of corporate veil-piercing to such entities, excluding those who are only associated with the corporation or do business with

the corporation. *TLIG Maint. Services, Inc. v. Fialkowski*, 218 So.3d 1271, 1282 (Ala. Civ. App. 2016) (holding that the Alabama Supreme Court currently limits "possible liability under the doctrine to shareholders, officers, and/or directors of corporate entities"). *See also Madison County Communications Dist. v. CenturyLink, Inc.*, 2012 WL 6685672, at *4 (N.D. Ala. Dec. 20, 2012) ("generally the corporate veil cannot be pierced horizontally between sibling corporations for liability purposes").

During a hearing on this motion, counsel for MGF could not identify any case applying Alabama law in which the court pierced the corporate veil of a company to find liable an entity who was not a shareholder, officer, or director of that company. And while there is reason to believe Alabama is in the minority of jurisdictions in this way, this court must apply Alabama law as it exists. *Id.* at 1283-85 (discussing that "[t]he majority of jurisdictions addressing this question allow veil-piercing against nonshareholders.") (Moore, J., concurring in part and dissenting in part).

### B. Application to this case

1. This means that, to survive summary judgment, MGF must offer some evidence that Symmetry is either a shareholder, officer, or director of Blue Ridge, not merely a sibling company that shares ownership or officers. But the parties agree that the five individual owners of Blue Ridge are the only people who fit the description of "shareholder, officer, or director." Doc. 78, p. 5; doc. 81, p. 11. While

the same five persons also own Symmetry, this does not mean that Symmetry owns Blue Ridge or that Symmetry is an officer or director of Blue Ridge.

Common ownership alone does not make Symmetry a proper party. Indeed, "common ownership" only functions as a factor to be considered *once a proper party has been identified. Duff v. S. Ry.*, 496 So.2d 760, 762 (Ala.1986). Alabama law does not allow corporate veil-piercing to reach "one who is associated with a corporate entity," but who is not themselves a shareholder, officer, or director. *TLIG Maintenance*, 218 So.3d at 1282. So while MGF might have been able to hold liable the individuals who commonly own Blue Ridge and Symmetry, it cannot hold Symmetry itself liable. This alone warrants summary judgment.

2. Even if Symmetry was a proper party under a corporate-veil piercing theory, MGF cannot complete a critical piece of the puzzle. The party seeking to pierce the corporate veil of one entity to reach a second must show these elements:

> 1) "[C]omplete control and domination of the subservient corporation" by the dominant party such that the subservient corporation had "no separate mind, will, or existence of its own";
>
> 2) "Misuse" of that control by the dominant party; and
>
> 3) That the misuse proximately caused the harm complained of.

*Id.* at 894-95. The Alabama Supreme Court has identified several factors that, in some combination, could satisfy the first element of control:

1) The parent corporation owns all or most of the capital stock of the subsidiary;

2) The parent and subsidiary corporations have common directors or officers;

3) The parent corporation finances the subsidiary;

4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;

5) The subsidiary has grossly inadequate capital;

6) The parent corporation pays the salaries and other expenses or losses of the subsidiary;

7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;

8) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;

9) The parent corporation uses the property of the subsidiary as its own;

10) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation; and,

11) The formal legal requirements of the subsidiary are not observed.

*Duff*, 496 So.2d at 762. The state court has never stated how many of these factors must be present, although, in *Duff*, the court found control when the plaintiff had

established at most five factors. *Id.*

MGF has presented these facts to support corporate veil piercing:

1) Symmetry and Blue Ridge maintain their headquarters in the same physical office in Florida;

2) Symmetry prepared a vendor application packet to MGF on behalf of Blue Ridge;

3) Symmetry sent invoices to Blue Ridge for management services averaging approximately $36,000/month for 21 months; and

4) Symmetry and Blue Ridge shared at least 5 common owners and therefore could not have engaged in an arm's-length transaction with each other.

Doc. 81, pp. 8-11. MGF posits that, when combined, these facts mandate a conclusion that Blue Ridge and Symmetry could not have negotiated their contract at arms'-length, a finding which would establish several *Duff* factors.

Symmetry admits these facts but argues they show only an ordinary business relationship between two companies within a larger conglomerate. As to Fact #1 (common headquarters), Symmetry notes that, under the CMS Provider Reimbursement Manual, Medicare required Blue Ridge to list its "home office" as Symmetry's home office because of the services Symmetry provides to Blue Ridge and the fact that the two have common owners. Doc. 84, pp. 10-12. This disclosure, in turn, allowed CMS to ensure that it appropriately reimbursed the amounts Blue Ridge paid to Symmetry, particularly since the two companies do have common

ownership. *Id.* As to Facts #2 and #3, Symmetry characterizes the payments as obligations Blue Ridge owed for management and office services provided by Symmetry, including the vendor application packet, under the contract.[1] *Id.* at 13. And the purpose of the Medicare reporting requirements is to allow Medicare to identify when these kinds of payments *are* unreasonable, a finding they did not make here. *Id.* at 11; CMS Pub. 15-1, § 1000.[2]

To someone unfamiliar with the regulations, the Blue Ridge-Symmetry relationship might seem suspicious. But Medicare recognizes the relationship as legitimate, and MGF fails to acknowledge these particular CMS regulations or Symmetry's argument that they contemplate and allow the precise type of relationship that Blue Ridge and Symmetry had.

MGF alleges other facts that it claims paint a picture of total control of Blue Ridge by Symmetry. But, unlike the facts discussed above, these allegations are without clear factual support:

1) Blue Ridge was undercapitalized;

2) 45% of Blue Ridge's home office expenses arise from services provided by Symmetry;

---

[1] During the hearing, counsel for MGF agreed that the vendor application packet was a legitimate service for which Symmetry could charge Blue Ridge.

[2] This section of the Medicare Provider Reimbursement Manual reads: "Costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization. However, such cost must not exceed the price of comparable services, facilities, or supplies that could be purchased elsewhere. *The purpose of this principle is two-fold: (1) to avoid the payment of a profit factor to the provider through the related organization (whether related by common ownership or control), and (2) to avoid payment of artificially inflated costs which may be generated from less than arm's-length bargaining.*" (emphasis added).

    3) Symmetry and Blue Ridge acted in concert to present Blue Ridge as a separate entity that controlled its own destiny; and,

    4) Levi Rudd, a member of Blue Ridge, holds a 54% stake in Symmetry.

MGF does not present facts that support allegations #1 and #3. MGF states that allegations #2 and #4 stem from Symmetry's Medicare cost report, which neither party could identify in the record. Additionally, MGF states that other facts supporting the scheme it alleges may only reveal themselves at trial through testimony "from the individuals it believes created the scheme," but MGF does not explain why MGF could not gain this information through discovery. Doc. 81, p. 21. So the court will not consider these additional "facts" that MGF alleges.

    As a result, the only *Duff* factor that MGF clearly meets is that involving common ownership. But "the fact that two companies have 'one-hundred percent' common ownership is, alone, 'an insufficient basis for applying the alter ego theory to pierce the corporate veil.'" *Eitzen Chem. PTE, Ltd. v. Carib Petroleum*, 749 Fed.Appx. 765, 771 (citing *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691 (5th Cir. 1985)). And, of course, Blue Ridge and Symmetry do not have one-hundred percent common ownership anyway. So this fact cannot carry MGF's burden of satisfying the control element.

In short, even if Alabama law considered Symmetry a candidate for veil-piercing, MGF has failed to present enough facts to create a triable issue. MGF has presented no evidence that Symmetry financed Blue Ridge, that Blue Ridge only did business with Symmetry, that Symmetry used Blue Ridge's property as its own, or that Blue Ridge failed to observe the legal requirements of a corporation. Frankly, MGF conducted little discovery about Symmetry, taking no depositions and providing no testimony to support MGF's claims about Symmetry. In other words, MGF points at plenty of smoke, but can show no fire.

3. During the hearing on this motion, counsel for MGF also sought to characterize Symmetry and Blue Ridge as functionally the same entity and thus hold Symmetry liable under an undefined, totality-of-the-circumstances theory. But, in doing so, MGF relied on the same set of facts that it used in trying to show that Blue Ridge and Symmetry did not negotiate at arms'-length. So for the same reasons as the court rejected MGF's corporate veil piercing argument, the court also rejects MGF's claim under this second theory.

\* \* \*

Unable to show that Symmetry and Blue Ridge operated as a single corporate entity, MGF's breach of contract, subterfuge/instrumentality, and fraud claims against Symmetry fail. And while MGF references its conspiracy claim as a basis for Symmetry's liability, MGF failed to respond in any way to Symmetry's motion

for summary judgment on MGF's conspiracy count. So the court considers the conspiracy count waived. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) (describing the rule that issues "alleged in the complaint but not relied upon in summary judgment are deemed abandoned").

## CONCLUSION

For the reasons stated above, Symmetry's motion for summary judgment (doc. 74) is due to be **GRANTED**. So the court will enter a separate order granting the motion and dismissing this case with prejudice.

**DONE** this 7th day of June, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE